**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ABHISHEK KUMAR, a/k/a Abhishek Abhishek,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1661-R** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Abhishek Kumar, a/k/a Abhishek Abhishek, a citizen of India proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 10), Respondents timely filed a Response, (Doc. 12), and the time to reply has passed. As fully set forth below, the undersigned recommends that the Petition be **GRANTED in part**

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 3). Although Petitioner is no longer listed in the U.S. Immigration and Customs Enforcement's Online Detainee Locator System, *see* https://locator.ice.gov/odls/#/search (last accessed October 6, 2026), Petitioner's counsel has provided a Notice verifying Petitioner's location. (Doc. 15, at 1)

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

because Petitioner's detention without a bond hearing violates the Immigration and Nationality Act ("INA"). The Court should order an individualized bond hearing before a neutral immigration judge within 7 days of the judgment in this matter, or else release Petitioner from custody.

## I. Factual Background and Procedural History

Petitioner submits, and Respondents do not deny, the following facts. Petitioner is a citizen of India who entered the United States on or about December 20, 2021, where he was encountered by United States Border Patrol. (Doc. 1, at 2). On January 14, 2022, Petitioner was released on parole. (*Id.* at 17). The parole authorization letter states, "Your parole authorization is valid for one year beginning from [January 13, 2022,] and will automatically terminate . . . at the end of the one-year period unless ICE provides you with an extension at its discretion." (*Id.*) Nothing in the record indicates ICE ever provided Petitioner with an extension of his parole. Therefore, Petitioner's parole automatically expired on January 13, 2023.

Petitioner filed an I-589 – Application for Asylum and for Withholding of Removal, which was received on June 1, 2022. (*Id.* at 20). On April 15, 2024, ICE instituted removal proceedings against him through issuance of a Notice to Appear ("NTA"), alleging he was an alien present in the United States who had not been admitted or paroled. (*Id.* at 22).

On or about June 18, 2026, Petitioner was stopped while driving his truck and was subsequently detained by ICE in Oklahoma. (*Id.* at 7). Petitioner asserts that he was detained without any basis and that he did not commit any crime or violation. (*Id.*) Petitioner states he has "never been arrested, charged, or convicted of any crime in the

United States." (*Id.* at 8). Petitioner asserts that Respondents did not provide any notice explaining the basis for the revocation of his earlier release. (*Id.* at 11-13). Petitioner has not been provided with a bond hearing since his arrest. (*Id.* at 8-10). On August 13, 2026, an immigration judge ordered Petitioner removed, and on September 2, 2026, the BIA received Petitioner's appeal. (Doc. 15, at 2). Thus, Petitioner does not have a final order of removal, and the case is pending. (*Id.*)

## II. Petitioner's Claims and Respondents' Responses

Petitioner makes the following claims in support of his Petition:

- **Count I: Violation of Bond Statute.** Petitioner alleges his continued detention under 8 U.S.C. § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to non-citizens, like him, who entered the United States and were thereafter detained in the interior of the country. (Doc. 1, at 10). Petitioner asserts he is eligible for a bond hearing under 8 U.S.C. § 1226(a). (*Id.*)

- **Count II: Violation of Parole Statute.** Petitioner argues that "8 U.S.C. § 1182(d)(5)(A) permits the termination of parole only where there is a finding that the purpose of such parole has been served" and that no such finding has been made. (*Id.* at 11).

- **Count III: Violation of Parole Regulation.** Petitioner argues that, under 8 C.F.R. § 212.5(e), parole may only be terminated if a DHS official finds that "humanitarian reasons do not warrant Petitioner's presence in the United States." (*Id.* at 11-12).

- **Count IV: Violation of Due Process: Revocation of Parole without Notice.** Petitioner argues that "[d]ue process requires notice before petitioner is re-detained by immigration authorities" and that such notice was not provided here. (*Id.* at 12-13).

- **Count V: Violation of Due Process: Revocation of Parole without Neutral Decisionmaker.** Petitioner argues that a termination of parole violates due process unless the non-citizen is provided with a pre-deprivation bond determination before a neutral adjudicator where the government bears the burden of justifying re-detention. (*Id.* at 14).

For relief, Petitioner requests immediate release, or, alternatively, a bond hearing where the government bears the burden of proving flight risk and dangerousness by clear and convincing evidence and where alternatives to detention are considered.[3] (*Id.* at 15).

Respondents concede "that this matter is controlled by" the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). (Doc. 12, at 1). However, "Respondents request that any order be limited to ordering the Respondents to provide a bond hearing within seven days." (*Id.*) Respondents do not address any of Petitioner's arguments for immediate release. (*See id.*)

## III. Standard of Review

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

---

[3] Petitioner's request for fees and costs under the Equal Access to Justice Act is premature. *See* 28 U.S.C. § 2412(d)(1)(B); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

## IV. The Termination of Petitioner's Parole Does Not Entitle Him to Release.

Petitioner contends that he is entitled to immediate release because the termination of his parole violates the INA, its regulations, and due process. (Doc. 1, at 11-15). The undersigned disagrees.

### A. The Termination of Petitioner's Parole Did Not Violate the INA or Its Regulations.

Petitioner first argues that the termination of his parole violates 8 U.S.C. § 1182(d)(5)(A). (*Id.* at 11). Under that statute,

> [t]he Secretary of Homeland Security may . . . parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission into the United State, *but* . . . when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added). Petitioner interprets this language to create a limitation on the government's discretion to terminate parole that specifically requires "a finding that the purpose of such parole has been served" before allowing its termination. (Doc. 1, at 11) (citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1133 (D. Or. 2025)). But this statute by its own terms does not apply when the term of parole is for a set period and expires automatically without any exercise of discretion. Petitioner's parole was set to expire automatically on January 13, 2023, years before his arrest, distinguishing this case from *Y-Z-L-H v. Bostock*, where the petitioner was re-detained before his parole was set to expire. 792 F. Supp. 3d at 1145. (*Id.* at 17). *See Valdovinos v. Warden, Cimarron Corr.*

*Facility*, No. CIV-26-924-J, Doc. 12, at 4 (W.D. Okla. July 30, 2026) (rejecting the argument that the petitioner was entitled to any individualized determination when parole expired automatically). Therefore, the termination of Petitioner's parole did not violate § 1182.

Petitioner next argues that the termination of his parole violates 8 C.F.R. § 212.5(e)(2)(i), which states that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [an authorized official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien." However, this subdivision is prefaced by a statement that it only applies to parole that is not automatically terminated. § 212.5(e)(2)(i).

Rather, the controlling subdivision is § 212.5(e)(1), which states, "Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized." As Judge Jones recently put it, "the regulation is clear: parole 'shall' terminate 'at the expiration of the time for which parole was authorized.'" *Valdovinos*, No. CIV-26-924-J, Doc. 12, at 3 (denying immediate release and holding that the petitioner's parole had automatically terminated without requiring any individualized determination). When

parole expires automatically, the government need not do anything else to terminate parole. Therefore, the termination of Petitioner's parole did not violate § 212.5(e).

**B. The Termination of Petitioner's Parole Did Not Violate Due Process.**

Petitioner also claims that he is entitled to immediate release because his due process rights were violated when he was re-detained without notice or a pre-deprivation determination before a neutral decisionmaker. (Doc. 1, at 12-15). He claims that, after his release on parole, due process requires prior notice and the government to bear the burden of justifying his re-detention. (*Id.* at 13-14).

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted). The undersigned analyzes Petitioner's procedural due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that parolees have a liberty interest in their physical freedom); *Sanchez*

*v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sep. 26, 2025) ("When the government grants [a non-citizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'"); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Here, Petitioner's liberty interest was threatened when his parole was terminated.

Turning to step two, the undersigned finds that the procedures that terminated Petitioner's parole did not violate due process and that he was not entitled to any additional process. Petitioner first argues that the termination of his parole violated due process because it was done without notice. (Doc. 1, at 12-13). However, Petitioner received notice on January 14, 2022, that his parole would expire on January 13, 2023, unless ICE provided him with an extension. (*Id*. at 17). Petitioner does not explain why further notice would be required on or after the date his parole was automatically terminated. *See Valdovinos*, No. CIV-26-924-J, Doc. 12, at 4 (finding that under the regulation that automatically terminates parole without notice, petitioner was not entitled to notice). Furthermore, Petitioner again received notice through the issuance of the NTA on April 15, 2024, charging him with removability, claiming he was not paroled, and initiating removal proceedings. (Doc. 1, at 22-23).

Petitioner next argues that his re-detention violated due process because he was re-detained without a pre-deprivation bond determination before a neutral decisionmaker. (*Id.*

at 14). Petitioner claims that the government bears the burden of justifying re-detention before it can revoke his parole. (*Id.*) However, in this case, parole was not revoked at the time of re-detention – it automatically terminated years before his re-detention, placing Petitioner in the same position as anyone else spending years unlawfully present in the interior of the United States. *See* 8 U.S.C. § 1182(d)(5)(A) ("[T]hereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").

As discussed below, a non-citizen in Petitioner's circumstance falls under 8 U.S.C. § 1226(a), which requires a post-deprivation bond hearing. *See Santillan Quiroz*, 180 F.4th at 1237. When Petitioner has not yet received a bond hearing under § 1226(a), the process due to him is the bond hearing mandated by § 1226(a). *See, e.g., Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) ("Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226 — namely, an individualized bond hearing before an IJ.").

The undersigned concludes that the automatic termination of Petitioner's parole upon its expiration did not violate the INA or its regulations and did not violate Petitioner's due process rights. Therefore, the Court should find Petitioner is not entitled to immediate release.

## V. Under *Santillan Quiroz v. Mullin*, Petitioner Is Entitled to a Bond Hearing.

On June 30, 2026, the Tenth Circuit decided *Santillan Quiroz,* holding "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to [8 U.S.C.] § 1226(a) (and thus eligible for bond), not [8

U.S.C.] § 1225(b)(2)(A)." 180 F.4th at 1237. This statutory interpretation is binding on this Court and applicable to Petitioner's factual circumstances, as Respondents concede.

Because Petitioner is subject to § 1226(a) and has not received a bond hearing, Petitioner has shown that he is in custody in violation of the laws of the United States, and he is entitled to habeas relief. 28 U.S.C. § 2241(c)(3). While Petitioner seeks immediate release, a bond hearing is the appropriate remedy. *Santillan Quiroz*, 180 F.4th at 1251 n.13.[4]

## VI. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition, (Doc. 1), be **GRANTED in part**. The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral immigration judge within 7 days of the judgment in this matter, or else release him from custody.

**The undersigned advises the parties of their right to object to this Report and Recommendation by October 14, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P.

[4] Under current BIA precedent, the non-citizen bears the burden of proving dangerousness or flight risk at a § 1226(a) bond hearing. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021). Judges in this District have either declined to decide whether due process requires shifting the burden to the government, *see Velazquez v. Johnson*, No. CIV-26-1111-J, 2026 WL 1999247, at *1 (W.D. Okla. July 10, 2026); *Karimov v. Grant*, No. CIV-26-639-J, 2026 WL 1493969, at *1 (W.D. Okla. May 28, 2026); *Rangel v. Mullin*, No. CIV-26-568-D, *Singh v. Figueroa*, No. CIV-26-600-R, or concluded that it does not. *See Adediran v. Figueroa*, No. CIV-26-801-J, *Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026); *Toro v. Mullin*, CIV-26-315-JD, Doc. 19, at 18 (W.D. Okla. May 12, 2026).

72(b)(2).[5] Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 7th day of October, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

[5] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").